# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE MARTIN SISILIANO-LOPEZ** | : | **CIVIL NO. 1:16-CV-1793** |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **MARY SABOL, et al.,** | : | |
| | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

Over the past 15 years, federal courts considering habeas petitions filed by detained aliens have developed a growing body of case law defining the contours of immigration detainees' due process rights as they are held in custody awaiting resolution of their removal proceedings. In prescribing the constitutional due process requirements in this setting, courts have focused on the stage and progress of the immigration removal proceedings themselves, and two different analytical paradigms have emerged.

In the normal course of immigration proceedings, for aliens who are in pre-removal proceedings, and are not subject to an administratively final order of removal,

1

the courts have prescribed that an individualized bond consideration is often necessary after the alien's detention has exceeded one year, effectively shifting the burden of proof and persuasion regarding continued detention to the government after one year of pre-removal detention. See Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015). In contrast, aliens who are subject to a final order of removal are governed by a different set of due process guideposts. These guideposts define a 90-day period of post-final removal order detention that is mandatory, and a 6 month term of post-removal detention that is presumptively reasonable. Zadvydas v. Davis, 533 U.S. 678 (2001). Beyond six months' detention, in the post-removal setting: "in order to state a claim [for habeas corpus relief] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, in a post-final removal order setting, the burden of proof remains firmly upon the petitioner at all times to show that he will not be removed in the foreseeable future.

One consequence of this analytical approach, which ties due process rights to the status of an alien's removal proceedings, is that courts on occasion are called upon to determine how the progress of an underlying removal proceeding may affect an

alien habeas petitioner's rights. For example, in the normal course of a removal proceeding, once an alien is subject to a final removal order that alien may petition for appellate court review of this removal order. In some instances where the court of appeals stays the initial removal order while it considers the alien's petition for review of the removal order it has been held that this stay withdraws the case from post-removal status, and the petitioner's continued detention is governed by the pre-removal due process standards. See Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012).

In the instant case, we are now called upon to consider another permutation of the question of how the status of an alien's removal proceedings may affect the alien's right to bail consideration. The petitioner in this case was previously removed from the United States and then returned illegally to this country. Located within the United States, Sisiliano was remanded to immigration custody and the order of removal entered against him was reinstated. By statute, this reinstated removal order may not be challenged at this later date. Nonetheless, Sisiliano has filed a petition with the court of appeals seeking review of these removal proceedings, and the court of appeals has entered an order staying his removal pending resolution of that petition.

On these facts, the parties dispute whether Sisiliano, who has been detained for nearly two years, is entitled to any bond consideration and what the standards

3

governing that bond consideration should be. While the parties contest these questions with great force and vigor, we are constrained to observe that the District Judge assigned to this case has already ruled upon these precise questions in prior immigration habeas corpus petitions, holding that an alien in Sisiliano's position, who has obtained a stay of a reinstated removal order from the court of appeals, is entitled as a matter of due process to an individualized bond hearing when the duration of his detention approaches two years. See, e.g., Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2017 WL 569176, at *1 (M.D. Pa. Feb. 13, 2017); Rafael Ignacio v. Sabol, No. 1:CV-15-2423, 2016 WL 4988056, at *1 (M.D. Pa. Sept. 19, 2016), reconsideration dismissed sub nom. Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426128 (M.D. Pa. Dec. 23, 2016). Moreover, according to this Court, at that hearing, the standards which typically apply to bond determinations in a pre-removal setting should be followed. Thus, under this Court's prior rulings, respondents would be required to provide Sisiliano with an individualized bond hearing at which the respondents would have the burden of proving that the petitioner's continued detention is necessary to satisfy the goals and objectives of immigration law. Id. Indeed, the District Court has recently reaffirmed its views on this legal issue within the past two weeks. See Mendoza-Ordonez v. Lowe, No. 1:16 CV 1777, 2017 WL 3172739, at *3 (M.D. Pa.

July 26, 2017). That most recent decision by Judge Caldwell made his views of this legal issue unmistakably clear, stating that:

> We reject the Government's contentions that detention should fall under § 1231, as those arguments merely disagree with this Court's recent opinion in Ignacio. Contrary to the Government's suggestion, this Court, in deciding Ignacio, thoroughly examined the statutes and regulations at issue. We have again done so here, and we agree . . . that the instant case is virtually indistinguishable from Ignacio. We will not reverse course from our Ignacio decision, which is being litigated in the Third Circuit. Accordingly, we find that because Mendoza is in ongoing withholding-of-removal proceedings, and because the Third Circuit has stayed his removal, his detention is subject to § 1226. See Ignacio, 2016 WL 4988056, at *5 (citing Jamai v. Saldana, 648 Fed.Appx. 225 (Mem), 2016 WL 1697654, at *1 (3d Cir. 2016)).

Mendoza-Ordonez v. Lowe, No. 1:16-CV-1777, 2017 WL 3172739, at *6 (M.D. Pa. July 26, 2017)

While the respondents are currently appealing this prior ruling in Sanchez, and continue to adhere to the view that aliens who have obtained a stay of a reinstated removal order are not entitled to the type of individualized bond consideration previously ordered by this District Court, the arguments advanced in this case parallel those considered, and rejected by the District Court in its prior decisions in Sanchez and Mendoza-Ordonez. Therefore, since the respondents have not provided the District Court with new legal grounds to reconsider its prior ruling, it is recommended that the District Court adhere to its prior decisions in Sanchez and Mendoza-Ordonez, and order individualized bond consideration for the petitioner in this case.

## II. Statement of Facts and of the Case

The pertinent facts in this case can be simply stated: Jose Martin Sisiliano-Lopez is a native and citizen of El Salvador. (Doc. 1 ¶ 7.) Sometime in April of 2013, Sisiliano unlawfully entered the United States. (Id., at ¶ 14.) Following a hearing before an immigration judge, on May 20, 2013, Sisiliano was ordered removed. (Id., at ¶ 16.) Sisiliano was physically removed from the United States on June 17, 2013. (Doc.6, Ex. 2, Decl. of Matthew C. Malani, at ¶ 2.) Following his removal, Sisiliano attempted to return to the United States unlawfully on August 17, 2015. (Id., ¶ 17.) Immigration officials reinstated Sisiliano's prior order of removal, resulting in Sisiliano's physical removal to El Salvador. On September 28, 2015, Sisiliano again attempted to enter the United States unlawfully, and was subsequently detained at York County Prison in York, Pennsylvania. (Id., ¶¶ 20, 22.) The next day, immigration officials reinstated his order of removal. (Id., ¶ 20.) After expressing a fear of return to El Salvador, Sisiliano was scheduled for an interview with an asylum officer. On November 9, 2005, Sisiliano was interviewed by an asylum officer. (Id., ¶ 23.) Finding that Sisiliano had a reasonable fear of persecution or torture in El Salvador, the asylum officer referred Sisiliano's case to the immigration judge for "withholding-only" proceedings. (Id.,¶ 23.)

On January 13, 2016, Sisiliano filed his application for withholding of removal with the immigration judge, and on March 25, 2016, Sisiliano appeared before the immigration judge for a hearing on his application. (Id., ¶25.) On April 12, 2016, in a written decision, the immigration judge denied Sisiliano's application for withholding of his removal to El Salvador. (Id., ¶ 28.) On May 12, 2016, Sisiliano filed an appeal with the Board of Immigration Appeals ("BIA"). (Id., ¶ 29.) In a decision dated September 9, 2016, the BIA dismissed Sisiliano's appeal.

On September 29, 2016, Sisiliano filed a petition for review with the Third Circuit. Sisiliano v. Att'y Gen. of the United States, No. 16-3695 (3d. Cir.). On February 3, 2017, the court of appeals entered an order staying Sisiliano's removal pending disposition of his petition for review. (Doc. 10-1.) His petition remains pending before that court and this stay of removal also remains in effect. Thus, Sisiliano has been in ICE custody for nearly two years, since his detention on September 28, 2015. (Id., ¶ 22.)

It is against this factual backdrop, and in the context of the District Court's prior rulings granting habeas relief to similarly-situated petitioners, that the parties present their contrasting claims regarding Sisiliano's entitlement to bail consideration while he awaits final action by the court of appeals on his reinstated, removal order. For the reasons set forth below, in the circumstances presented by this case, and in light of the

District Court's prior rulings on this issue, it is recommended that the District Court adhere to its prior decisions in Sanchez and Mendoza-Ordonez, and order individualized bond consideration for the petitioner in this case.

**III. Discussion**

As we have noted, this case presents an interesting interplay between substantive immigration removal statutes and the emerging and evolving due process standards which govern federal habeas corpus petitions filed by immigration detainees. Moreover, in this case we most emphatically do not write upon a blank slate. Quite the contrary, as one judge of this Court has aptly observed:

> [T]here appears to exist well-reasoned decisions on either side of the issue now presently before the Court; that is, whether petitioner should be considered a pre-removal-order immigration detainee under § 1226(a) or a post-removal-order immigration detainee under § 1231(a). Compare Guerra v. Shanahan, 831 F.3d 59, 63-64 (2d Cir. 2016) (holding that immigration detainee's detention during pendency of withholding-only proceedings is under § 1226(a)); Rafael Ignacio v. Sabol, No. 15-CV-2423, 2016 WL 4988056, at *4 (M.D. Pa. Sept. 19, 2016) (same); Guerrero v. Aviles, No. 14-CV-4367, 2014 WL 5502931, at *9 (D.N.J. Oct. 30, 2014) (same); with Pina v. Castille, No. 16-CV-4280, 2017 WL 935163, at *8 (D.N.J. March 9, 2017) (finding petitioner detained under a reinstated order of removal with withholding of removal proceedings under § 1231(a)); Padilla-Ramirez v. Bible, 180 F. Supp. 3d 697, 701-02 (D. Idaho 2016) (same); Reyes v. Lynch, No. 15-CV-0442, 2015 WL 5081597, at *3-4 (D. Colo. Aug. 28, 2015) (same); Castaneda v. Aitken, 15-CV-01635, 2015 WL 3882755, at *5 (N.D. Calif. June 23, 2015) (same); Dutton-Myrie v. Lowe, No. 13-CV-2160, 2014 WL 5474617, at *3-4 (M.D. Pa. Oct. 28, 2014) (same); Santos v. Sabo, No. 14-CV-0635, 2014 WL 2532491, at *3-4 (M.D. Pa. June 5, 2014) (same).

Bucio-Fernandez v. Sabol, No. 1:17 CV 00195, 2017 WL 2619138, at *3 (M.D. Pa. June 16, 2017).

In particular, we note that the District Court Judge assigned to the instant case, Judge Caldwell, has directly addressed this legal question on a number of occasions, including in a ruling within the past two weeks, holding that an alien in Sisiliano's position who has obtained a stay of a reinstated removal order from the court of appeals is entitled as a matter of due process to an individualized bond hearing when the duration of his detention approaches two years. See e.g., Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2017 WL 569176, at *1 (M.D. Pa. Feb. 13, 2017); Rafael Ignacio v. Sabol, No. 1:CV-15-2423, 2016 WL 4988056, at *1 (M.D. Pa. Sept. 19, 2016), reconsideration dismissed sub nom. Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426128 (M.D. Pa. Dec. 23, 2016); Mendoza-Ordonez v. Lowe, No. 1:16-CV-1777, 2017 WL 3172739, at *3 (M.D. Pa. July 26, 2017). Moreover, according to this Court, at that hearing, the standards which typically apply to bond determinations in a pre-removal setting should be followed. Thus, under the Court's prior rulings, respondents would be required to provide Sisiliano with an individualized bond hearing at which the respondents would have the burden of proving that the petitioner's continued detention is necessary to satisfy the goals and objectives of immigration law. Id.

Recognizing the clear path chosen by the presiding judge in this case on this precise legal issue as recently as July 26, 2017, we could only recommend that this Court depart from its prior precedent if it was presented with legal grounds sufficient to justify reconsideration of this decision as a matter of law. In this regard, the legal standards that govern a request to reconsider a prior legal ruling are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a request should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice." Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).
>
> Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Moreover, it is evident that a request for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a request is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

Viewing the instant petition in light of Judge Caldwell's prior rulings on this precise legal issue, and through the analytical lens of a request to reconsider those prior rulings, we conclude that it is unlikely that the Court would deem reconsideration of its past decisions to be appropriate. At the outset, we are not presented with new or different evidence which would compel Judge Caldwell to follow a different path than that which the District Court has chosen in Rafael Ignacio v. Sabol, No. 1:CV-15-2423, 2016 WL 4988056, at *1 (M.D. Pa. Sept. 19, 2016), reconsideration dismissed sub nom. Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426128 (M.D. Pa. Dec. 23, 2016) and Mendoza-Ordonez v. Lowe, No. 1:16-CV-1777, 2017 WL 3172739, at *3 (M.D. Pa. July 26, 2017). The disputed nature of this

legal question, which may be resolved in the future by the court of appeals, also strongly suggests that reasonable jurists can disagree on this question, and undermines any claim that reconsideration of Judge Caldwell's prior rulings is necessary in this case to correct a clear error of law. Moreover, while the law is developing in this field, it is following two divergent courses, and we cannot say that Judge Caldwell should reconsider his prior rulings due to some controlling and intervening change in the law.

Accordingly, finding that the arguments set forth by the parties in the instant case do not provide grounds for reconsideration of Judge Caldwell's prior rulings on this issue as a matter of law, it is recommended that the District Court adhere to its prior decisions in <u>Sanchez</u> and <u>Mendoza-Ordonez</u>, and order individualized bond consideration for the petitioner in this case.

In the alternative, we note that even if we accepted the respondents' invitation to assess this case under the post-final order of removal paradigm prescribed by the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), we would still recommend that Sisiliano now receive an individualized bond hearing. <u>Zadvydas</u> defines a 90-day period of post-final removal order detention that is mandatory, and a 6 month term of post-removal detention that is presumptively reasonable. However, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not

legal question, which may be resolved in the future by the court of appeals, also strongly suggests that reasonable jurists can disagree on this question, and undermines any claim that reconsideration of Judge Caldwell's prior rulings is necessary in this case to correct a clear error of law. Moreover, while the law is developing in this field, it is following two divergent courses, and we cannot say that Judge Caldwell should reconsider his prior rulings due to some controlling and intervening change in the law.

Accordingly, finding that the arguments set forth by the parties in the instant case do not provide grounds for reconsideration of Judge Caldwell's prior rulings on this issue as a matter of law, it is recommended that the District Court adhere to its prior decisions in <u>Sanchez</u> and <u>Mendoza-Ordonez</u>, and order individualized bond consideration for the petitioner in this case.

In the alternative, we note that even if we accepted the respondents' invitation to assess this case under the post-final order of removal paradigm prescribed by the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), we would still recommend that Sisiliano now receive an individualized bond hearing. <u>Zadvydas</u> defines a 90-day period of post-final removal order detention that is mandatory, and a 6 month term of post-removal detention that is presumptively reasonable. However, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not

legal question, which may be resolved in the future by the court of appeals, also strongly suggests that reasonable jurists can disagree on this question, and undermines any claim that reconsideration of Judge Caldwell's prior rulings is necessary in this case to correct a clear error of law. Moreover, while the law is developing in this field, it is following two divergent courses, and we cannot say that Judge Caldwell should reconsider his prior rulings due to some controlling and intervening change in the law.

Accordingly, finding that the arguments set forth by the parties in the instant case do not provide grounds for reconsideration of Judge Caldwell's prior rulings on this issue as a matter of law, it is recommended that the District Court adhere to its prior decisions in <u>Sanchez</u> and <u>Mendoza-Ordonez</u>, and order individualized bond consideration for the petitioner in this case.

In the alternative, we note that even if we accepted the respondents' invitation to assess this case under the post-final order of removal paradigm prescribed by the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), we would still recommend that Sisiliano now receive an individualized bond hearing. <u>Zadvydas</u> defines a 90-day period of post-final removal order detention that is mandatory, and a 6 month term of post-removal detention that is presumptively reasonable. However, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not

mean that every alien not removed must be released after six months," Id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure bond consideration pending removal. In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

We find that Sisiliano has carried this burden of proof in the instant case. Here, the length of Sisiliano's immigration detention now approaches two years, a duration of confinement that far exceeds the 6 month time frame deemed presumptively reasonable under Zadvydas. While the respondents assert that Sisiliano has not met the second part of his threshold burden under Zadvydas by casting sufficient doubt over the question of whether there is no significant likelihood of his removal in the foreseeable future, we disagree with this assessment. On this score, we note that the question of whether Sisiliano is entitled to withholding from removal to his homeland, El Salvador, has been the subject of on-going disputes among immigration officials, with immigration judges, at the BIA, and is now being addressed by the court of appeals. This closely litigated question clouds the ability of immigration officials to

remove Sisiliano to his country of origin, and we cannot find that there is a significant likelihood that Sisiliano could be removed to El Salvador in the foreseeable future. While the respondents assert that granting withholding from removal protections to Sisiliano would only preclude his removal to El Salvador, and would not prevent his removal to some other third country, this fact does not change our analysis of the need for a hearing in a post-final order of removal setting. The possibility that the respondents may at some future date find some third country that is willing to accept Sisiliano if his request for withholding from removal to El Salvador is granted is in our estimation too remote, and does not overcome the current showing that there exists: "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). On this score, we note that the governing legal standard asks whether there is "good reason to believe that there is no significant likelihood of removal *in the reasonably foreseeable future.*" Id. (emphasis added.) The respondent's position seems to conflate the concept of a significant likelihood of removal in the reasonably foreseeable future with the notion of some eventual success on the merits. Thus, the respondents argue that they will likely, eventually, prevail in their efforts to remove Sisiliano. While this may be so, we cannot say that it is likely that this action will take place in the reasonably foreseeable future, the legal benchmark which now guides us

14

in this bond determination. Therefore, we conclude that the respondent's confidence in their ultimate success in these removal proceedings does not relieve them of the obligation to provide some individualized bond consideration now for Sisiliano after two years of detention.

In short, the past history of these removal proceedings has led to a prolonged, two year period of detention without any individualized bond consideration. Moreover, the future course of these removal proceedings, and the prospects for the removal of the petitioner in the reasonably foreseeable future, are all subject to a number of vagaries and contingencies. The duration of this past detention, and the present uncertainties regarding the course of these removal proceedings, combine to satisfy the petitioner's burden of proof entitling him to a bond hearing in a post-final order of removal setting. Therefore, even when this case is assessed under the <u>Zadvydas</u> analytical model, we conclude that an individualized bond hearing is still necessary.

Having concluded that an individualized hearing is warranted here, we turn to the question of who should conduct this hearing, since one of the petitioner's alternate prayers for relief seeks a bond hearing before an immigration judge or this Court. Finding that an individualized bail hearing is appropriate in this case, it is recommended that this Court order that an immigration judge in the first instance

conduct this individualized bond hearing. Indeed, the appellate court has suggested that, in many instances, this initial bail determination can, and should, be made by the immigration judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to immigration judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Vale v. Sabol, No. 1:15-CV-2249, 2015 WL 8602751, at *1 (M.D. Pa. Dec. 14, 2015); Singh v. Sabol, No. 1:14-CV-1927, 2015 WL 3519075, at *1 (M.D. Pa. June 4, 2015), appeal dismissed (Sept. 9, 2015); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Finally, we note that while we recommend that such a hearing be conducted in this case, nothing in this recommendation should be construed as suggesting what the outcome of that hearing should be. Instead, we leave that assessment to the sound discretion of the immigration judge.

## IV. Recommendation

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the District Court GRANT the petition and order an individualized bond hearing for the petitioner within 21 days in accordance with the dictates of the Court's prior decisions in Rafael Ignacio v. Sabol, No. 1:CV-15-2423, 2016 WL 4988056, at *1 (M.D. Pa. Sept. 19, 2016), reconsideration dismissed sub nom. Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426128 (M.D. Pa. Dec. 23, 2016) and Mendoza-Ordonez v. Lowe, No. 1:16-CV-1777, 2017 WL 3172739, at *3 (M.D. Pa. July 26, 2017). In the alternative, even if the Court reconsiders its prior rulings in Rafael Ignacio v. Sabol, No. 1:CV-15-2423, 2016 WL 4988056, at *1 (M.D. Pa. Sept. 19, 2016), reconsideration dismissed sub nom. Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426128 (M.D. Pa. Dec. 23, 2016) and Mendoza-Ordonez v. Lowe, No. 1:16-CV-1777, 2017 WL 3172739, at *3 (M.D. Pa. July 26, 2017) when this case is assessed under the Zadvydas post final order of removal analytical model, we conclude that an individualized bond is still necessary, and IT IS RECOMMENDED that the District Court GRANT the petition and order an individualized bond hearing for the petitioner within 21 days.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of August, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge