# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE MARTIN SISILIANO-LOPEZ, | No. 1:16-CV-01793 |
| Petitioner, | (Judge Brann) |
| v. | |
| CRAIG A. LOWE, *et al.*, | |
| Respondents. | |

## MEMORANDUM OPINION

### MARCH 25, 2020

In August 2017, United States District Judge William W. Caldwell[1] granted Jose Martin Sisiliano-Lopez's 28 U.S.C. § 2241 petition and ordered that the Government provide Sisiliano-Lopez a bond hearing pending the resolution of his motion for withholding of removal.[2] Pursuant to the Equal Access to Justice Act ("EAJA"), Sisiliano-Lopez now moves this Court for an order directing the Government to compensate him for the attorneys' fees and expenses that he incurred litigating that petition.[3] For the following reasons, that motion will be granted in part.

---

[1] Judge Caldwell died in May 2019, and this matter was administratively reassigned to the undersigned.

[2] Doc. 25.

[3] Doc. 30.

# I. BACKGROUND

Sisiliano-Lopez, a citizen of El Salvador, unlawfully entered the United States in 2013, starting a chain of events that led to this matter. In August 2017, Magistrate Judge Martin C. Carlson summarized the history of this matter following Sisiliano-Lopez's illegal entry into the country:

> Following a hearing before an immigration judge, on May 20, 2013, Sisiliano was ordered removed. Sisiliano was physically removed from the United States on June 17, 2013. Following his removal, Sisiliano attempted to return to the United States unlawfully on August 17, 2015. Immigration officials reinstated Sisiliano's prior order of removal, resulting in Sisiliano's physical removal to El Salvador.
>
> On September 28, 2015, Sisiliano again attempted to enter the United States unlawfully, and was subsequently detained at York County Prison in York, Pennsylvania. The next day, immigration officials reinstated his order of removal. After expressing a fear of return to El Salvador, Sisiliano was scheduled for an interview with an asylum officer. On November 9, 20[1]5, Sisiliano was interviewed by an asylum officer. Finding that Sisiliano had a reasonable fear of persecution or torture in El Salvador, the asylum officer referred Sisiliano's case to the immigration judge for "withholding-only" proceedings.
>
> On January 13, 2016, Sisiliano filed his application for withholding of removal with the immigration judge, and on March 25, 2016, Sisiliano appeared before the immigration judge for a hearing on his application. On April 12, 2016, in a written decision, the immigration judge denied Sisiliano's application for withholding of his removal to El Salvador. On May 12, 2016, Sisiliano filed an appeal with the Board of Immigration Appeals ("BIA"). In a decision dated September 9, 2016, the BIA dismissed Sisiliano's appeal.
>
> On September 29, 2016, Sisiliano filed a petition for review with the [United States Court of Appeals for the] Third Circuit. On February 3, 2017, the court of appeals entered an order staying Sisiliano's removal

2

pending disposition of his petition for review. His petition remains pending before that court and this stay of removal also remains in effect. Thus, Sisiliano has been in ICE custody for nearly two years, since his detention on September 28, 2015.[4]

On August 29, 2016, Sisiliano-Lopez filed his § 2241 petition with this Court raising two arguments. First, Sisiliano-Lopez argued that he was being detained pursuant to 8 U.S.C. § 1226—not 8 U.S.C. § 1231—and, thus, was entitled to a bond hearing after having spent approximately eleven months in custody.[5] Second, he asserted that, regardless of the basis for his detention, the Due Process Clause of the United States Constitution mandated an individualized bond hearing after prolonged detention.[6] The Government in turn argued that, because he was subject to a reinstated removal order, Sisiliano-Lopez was being held pursuant to § 1231 and was therefore subject to mandatory detention.[7] The Government further argued that Sisiliano-Lopez's detention did not violate the Due Process Clause, as there was a significant possibility that he would soon be removed from the country.[8]

In August 2017, Magistrate Judge Carlson issued a Report and Recommendation wherein he rejected the Government's position that Sisiliano-Lopez was detained pursuant to § 1231, noting that Judge Caldwell has twice ruled

---

[4] Doc. 19 at 6-7.
[5] Doc. 1 at 10-15.
[6] *Id.* at 15-17.
[7] Doc. 6 at 10-21.
[8] *Id.* at 21-24.

3

in prior cases that individuals in Sisiliano-Lopez's position were held pursuant to § 1226.[9] Magistrate Judge Carlson further noted that, even if Sisiliano-Lopez were held pursuant to § 1231, his continued detention without a bond hearing violated the Due Process Clause, as such continued detention was unreasonable and Sisiliano-Lopez's removal was not likely in the reasonably foreseeable future.[10] Magistrate Judge Carlson therefore recommended that Judge Caldwell grant Sisiliano-Lopez's petition and order a bond hearing.

On August 22, 2017—over the Government's objection—Judge Caldwell adopted Magistrate Judge Carlson's Report and Recommendation, granted Sisiliano-Lopez's petition, and ordered the Government to hold an individualized bond hearing at which the Government bore "the burden of proving by clear and convincing evidence at this hearing that [Sisiliano-Lopez's] continued detention is necessary to fulfill the purposes of the detention statute."[11] A bond hearing was held, and Sisiliano-Lopez was released on $5,000 bond.[12] The Government appealed Judge Caldwell's decision granting Sisiliano-Lopez's § 2241 petition to the Third Circuit, but eventually stipulated to the appeal's dismissal.[13]

---

[9] Doc. 19 at 8-12.

[10] *Id.* at 12-15.

[11] Doc. 25.

[12] Doc. 26-1.

[13] Doc. 30-4 at 12.

## II. DISCUSSION

The EAJA states that, in civil actions brought against the United States, courts "shall" award "reasonable attorneys['] fees" incurred by the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[14] The Government does not dispute that Sisiliano-Lopez was the prevailing party and that no special circumstances exist that would justify denial of fees and expenses, but argues that its position was substantially justified, and that the number of hours expended and the hourly rate charged by Sisiliano-Lopez's counsel are unreasonable.[15]

### A. Whether the Government's Position was Substantially Justified

A position by the Government is substantially justified when it has a "reasonable basis in both law and fact."[16] In a case involving agency action, the Government's position "includes . . . the agency position that made the litigation necessary in the first place."[17] Therefore, to avoid paying Sisiliano-Lopez's

---

[14] 28 U.S.C. § 2412(d)(1)(A).

[15] Doc. 32.

[16] *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

[17] *Id. See Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005) ("[I]n immigration cases, the Government must meet the substantially justified test twice—once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action.").

attorneys' fees, the Government must show that Sisiliano-Lopez's detention without a bond hearing was reasonable.[18]

The Government contends that its litigation position was substantially justified because the question of whether Sisiliano-Lopez was detained pursuant to § 1226(c) or § 1231 was—at the time—an open question in this Circuit and had led to a split amongst various courts.[19] At the time that Sisiliano-Lopez filed this § 2241 petition, the Third Circuit had not yet addressed the "novel question of immigration law" that was posed by the detention of individuals who are detained pursuant to reinstated removal orders.[20] Based on the novelty of the question of law regarding under what section of the immigration statute Sisiliano-Lopez was detained, the Government's litigation position here was substantially justified. Nevertheless, a review of the relevant case law makes clear that the Government's decision to hold Sisiliano-Lopez without a bond hearing after one year in custody was not substantially justified.

In its 2001 decision in *Zadvydas v. Davis*,[21] the United States Supreme Court considered the habeas petitions of two individuals detained pursuant to 8 U.S.C. § 1231(a)(6). That statute indicates that the Government "may" detain certain

---

[18] *Kleinauskaite v. Doll*, No. 4:17-CV-02176, 2019 WL 3302236, at *2 (M.D. Pa. July 23, 2019).
[19] Doc. 32 at 9-16.
[20] *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 211 (3d Cir. 2018).
[21] 533 U.S. 678 (2001).

6

individuals after they have been ordered removed from the country, while actual removal is being effectuated. Both individuals in *Zadvydas* were subject to removal orders and otherwise qualified for detention under § 1231(a)(6), but the Government had been unable to effectuate their removal.[22] Facing "potentially permanent" detention, the petitioners challenged the statute's constitutionality.[23]

The Supreme Court began its analysis by recognizing that "[f]reedom from imprisonment lies at the heart of the liberty that [the Due Process] Clause protects" and that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," especially in light of the Supreme Court's previous decisions requiring either "adequate procedural protections" before detention is permitted in criminal proceedings or "special justification[s]" before detention is permitted in "certain special and narrow nonpunitive circumstances."[24] The Supreme Court then rejected the Government's two asserted interests in petitioners' detention. First, the court rejected the Government's asserted interest in "ensuring the appearance of aliens at future immigration proceedings," since "removal seem[ed] a remote possibility at best" for these petitioners.[25] Second, the court rejected the Government's asserted interest in "preventing danger to the

---

[22] *Id.* at 684-85.

[23] *Id.* at 691.

[24] *Id.* at 690.

[25] *Id.*

7

community," since detention under the statute was not "limited to specially dangerous individuals and subject to strong procedural protections" but instead applied "broadly to aliens ordered removed for many and various reasons, including tourist visa violations" and was subject to no procedural check other than "administrative proceedings, where the alien bears the burden of proving he is not dangerous."[26]

The Supreme Court then inquired whether there was "any clear indication of congressional intent to grant the [Government] the power to hold indefinitely in confinement an alien ordered removed."[27] Finding none, the court used the canon of constitutional avoidance to interpret the statute as allowing detention only for a period "reasonably necessary to bring about [an] alien's removal from the United States."[28] The Supreme Court held that six months' detention without a bond hearing was presumptively reasonable, but that detention beyond that period was permissible only if the Government was able to show a "significant likelihood of removal in the reasonable foreseeable future."[29] The court indicated, however, that

---

[26] *Id*. at 691-92.

[27] *Id.*

[28] *Id*.

[29] *Id.*

8

"as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[30]

In its 2011 decision in *Diop v. ICE/Homeland Security*,[31] the Third Circuit considered a habeas petition filed by an individual who argued that his automatic, unreviewed detention pursuant to 8 U.S.C. § 1226(c) was unconstitutional. The Third Circuit concluded that "[a]t a certain point, continued detention [pursuant to § 1226(c)] becomes unreasonable and . . . [therefore] unconstitutional[,] unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with [that statute's] purposes of preventing flight and dangers to the community."[32] Recognizing that ascertaining reasonableness is "necessarily . . . a fact-dependent inquiry that will vary depending on individual circumstances," the court "decline[d] to establish a universal point at which detention will always be considered unreasonable," and rejected a proposed six-month presumption of unreasonableness.[33] The court, however, stated that "there can be no question that [the petitioner's] detention for nearly three years [without a bond hearing] was unreasonable and, therefore, a violation of the Due Process Clause."[34]

---

[30] *Id.*

[31] 656 F.3d 221 (3d Cir. 2011).

[32] *Id.* at 232.

[33] *Id.* at 233.

[34] *Id.*

The Third Circuit further emphasized that "Congress [did not] intend[] to authorize prolonged, unreasonable[] detention without a bond hearing."[35] The court therefore also employed the canon of constitutional avoidance to hold that § 1226(c) "contains an implicit limitation of reasonableness," and "authorizes only mandatory detention that is reasonable in length."[36]

The Third Circuit's 2015 decision in *Chavez-Alvarez v. Warden York County Prison*[37] considered yet another challenge to automatic, unreviewed detention pursuant to § 1226(c). Referencing *Diop*, the court reiterated that "any determination on reasonableness [is] highly fact-specific," and while ostensibly rejecting any "bright-line rule," the court nevertheless found that, at the one-year mark, "the burdens to [the petitioner's] liberties" were "certainly . . . outweighed [by] any justification for using presumptions" about flight or dangerousness that were embedded in § 1226(c).[38] The court therefore found that Chavez-Alvarez's due process rights had been violated and ordered that the petition be granted.

In early 2018, the Supreme Court, in *Jennings v. Rodriguez*,[39] held that, because 8 U.S.C. § 1226(c) explicitly directs the Government to detain certain

---

[35] *Id.* at 235.

[36] *Id.*

[37] 783 F.3d 469 (3d Cir. 2015).

[38] *Id.* at 474-78.

[39] 138 S. Ct. 830 (2018).

10

individuals, the statute is not ambiguous and is thus impervious to the canon of constitutional avoidance. It therefore overruled the Ninth Circuit's interpretation of § 1226(c) that required bond hearings. Later in 2018, in *Borbot v. Warden Hudson County Correctional Facility*,[40] the Third Circuit recognized that *Jennings* effectively abrogated *Diop*'s statutory holding that, based on the canon of constitutional avoidance, § 1226(c) *itself* required bond hearings.[41] The Third Circuit, however, noted that "*Jennings* did not call into question [*Diop*'s] constitutional holding" that unreasonably long detention without a bond hearing violates the Due Process Clause.[42]

Finally, later in 2018 the Third Circuit in *Guerrero-Sanchez v. Warden York County Prison*[43] addressed the circumstances at issue here—a habeas petition filed by an individual who was subject to a reinstated order of removal, but also sought withholding-only relief. The Third Circuit first determined that such individuals are held pursuant to 8 U.S.C. § 1231, not 8 U.S.C. § 1226.[44] The Court then noted "the due process concerns posed by prolonged detention" and held that, after a certain point, "the private interests at stake [become] profound and the risk of an erroneous

---

[40] 906 F.3d 274 (3d Cir. 2018).

[41] *Id.* at 278.

[42] *Id.*

[43] 905 F.3d 208 (3d Cir. 2018).

[44] *Id.* at 213-19.

deprivation of liberty . . . substantial," and thus used the canon of constitutional avoidance to interpret § 1231(a)(6) as requiring a bond hearing after six months.[45] Notably, the Third Circuit saw "no substantial distinction between the liberty interests of aliens detained" in *Diop* with those like Sisiliano-Lopez who are detained pursuant to reinstated orders of removal.[46]

Thus, *Guerrero-Sanchez* makes clear that Sisiliano-Lopez was actually entitled to a bond hearing after six months' detention, well prior to the date that he filed his § 2241 petition. Nevertheless, the Government cannot be ordered to pay attorneys' fees under EAJA based on *Guerrero-Sanchez*, as that decision post-dates all litigation in this matter.[47] During the time that litigation was ongoing in this matter, the United States Supreme Court had previously concluded that detention without a bond hearing for up to six months was presumptively reasonable under the Due Process Clause, and the Third Circuit had declined to require bond hearings at the six-month mark.[48] Thus, the Government had a reasonable basis to detain Sisiliano-Lopez up to the six-month mark without a bond hearing. However, even discounting the impact of *Guerrero-Sanchez*, it should have been clear to the

---

[45] *Id.* at 225.

[46] *Id.* at 222.

[47] *See Pierce v. Underwood*, 487 U.S. 552, 561 (1988) (noting that the relevant question under the EAJA is "not what the law now is, but what the Government was substantially justified in believing it to have been").

[48] *Zadvydas*, 533 U.S. at 691-92; *Diop*, 656 F.3d at 232-33; *Chavez-Alvarez*, 783 F.3d at 474-78.

12

Government that detaining Sisiliano-Lopez without a bond hearing beyond the one-year mark was not justified.

As this Court noted in *Kleinauskaite v. Doll*, the Third Circuit in "*Chavez-Alvarez* . . . ascertained that, at the one-year mark, unreviewed detention necessarily becomes unreasonable."[49] Thus, at a minimum, when *Chavez-Alvarez* issued in April 2015, "the twelve-month milestone [became an] appropriate [measure for when] detention escaped the realm of reason."[50]

*Chavez-Alvarez* issued more than five months before Sisiliano-Lopez was detained and placed in federal custody. The relevant case law within the Third Circuit made clear that, regardless of what statute an individual is detained under during removal proceedings, the Due Process Clause is violated where that individual is detained for more than one year without a bond hearing.[51] The Government therefore was not substantially justified in holding Sisiliano-Lopez after September 28, 2016—one year after he was initially detained pending removal from the country—without conducting a bond hearing. Consequently, the Court

---

[49] *Kleinauskaite*, 2019 WL 3302236, at *6.

[50] *Kleinauskaite*, 2019 WL 3302236, at *6.

[51] Although *Chavez-Alvarez* contained extensive analysis about the underlying removal proceedings—specifically, whether the petitioner's actions were the cause of those proceedings' delay and, if so, whether petitioner's action were in good faith—there is no evidence in the record that any of Sisiliano-Lopez's actions were taken in bad faith. Moreover, given the clear and repeated indications from the Third Circuit that prolonged detention without a bond hearing violates the Due Process Clause, the circuit split referenced by the Government cannot justify Sisiliano-Lopez's prolonged detention without a bond hearing.

finds an award under the EAJA appropriate for all hours and fees expended after that date.[52]

### B. Whether the Rates Charged are Reasonable

Having concluded that attorneys' fees are appropriate, the Court must now address the amount to be awarded to Sisiliano-Lopez. The Government first argues that Sisiliano-Lopez's attorney is not entitled to a rate of $250 per hour, as (1) an immigration law specialist was not necessary for this matter, (2) there is insufficient evidence that there are few immigration-law specialists within this District, and (3) this case was not overly complex.[53] Second, the Government asserts that some billable hours should be discounted, as they are not properly subject to the EAJA.[54]

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses."[55] The statute further provides that:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for

---

[52] Even under *Zadvydas*, the Government bore the burden of demonstrating that Sisiliano-Lopez's removal was imminent. 533 U.S. at 691-92. Considered under that rubric, the Court would still find that Sisiliano-Lopez's detention without a bond hearing became unreasonable by the one-year mark. By then an immigration official had concluded that Sisiliano-Lopez possessed a reasonable fear of prosecution or torture should he be returned to El Salvador, immigration officials had rejected his application for withholding of removal, and Sisiliano-Lopez had filed an appeal to the Third Circuit. Clearly then, Sisiliano-Lopez's appeal process would not imminently conclude; indeed, the Third Circuit issued a stay of removal order on February 3, 2017.

[53] Doc. 32 at 17-19.

[54] *Id.* at 19-21.

[55] 28 U.S.C. § 2412(d)(1)(A).

the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.[56]

Special factors that authorize a reviewing court to award a higher fee also include "some distinctive knowledge or specialized skill needful for the litigation in question."[57]

Sisiliano-Lopez's attorney has submitted an affidavit to the Court that adequately demonstrates his expertise in immigration law.[58] Additionally, there is ample evidence of an absence of attorneys within the Middle District of Pennsylvania who specialize in immigration law and who are willing to accept work at the EAJA statutory rate.[59]

---

[56] 28 U.S.C. § 2412(d)(2)(A).

[57] *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

[58] Doc. 30-2.

[59] Doc. 30-7. Although the list provided by Sisiliano-Lopez's attorney is alone not dispositive of this question, that information simply reinforces what this and other judges within the Middle District of Pennsylvania have repeatedly affirmed: that there is an absence of qualified immigration attorneys within the District who are willing to work at the statutory rate. *See Walker v. Lowe*, No. 4:15-CV-0887, 2016 WL 6082289, at *5 (M.D. Pa. Oct. 17, 2016) (noting that "specialized knowledge of immigration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are 'special factors' which justify [a reasonable] increase in the rate of pay"); *Mendoza-Ordonez v. Lowe*, No. 1:16-CV-1777, 2019 WL 1410893, at *20 (M.D. Pa. Mar. 28, 2019) (same and collecting cases).

Moreover, the Court concludes that Sisiliano-Lopez's attorney's expertise in that area of the law was helpful in this matter. Certainly, litigating the question of whether detention was reasonable under *Zadvydas* required at least some understanding of immigration law. The question of whether Sisiliano-Lopez's removal was imminent required an understanding of the immigration and appeals process and the speed at which that process occurs. An attorney would also need to determine the likelihood of success in the immigration matters, as well as whether further appeals or proceedings would have presented a colorable claim or would simply have served to stall deportation proceedings in pursuit of a frivolous claim.[60] In light of this, the Court reaffirms its conclusion in other cases "that Petitioners' counsel's specialized knowledge of immigration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are special factors which justify a reasonable increase in the rate of pay" to $250 per hour.[61]

Turning then to the question of whether counsel's hours should be discounted, the Court concludes that such hours should be discounted, but only to the extent that counsel's work predated the one-year mark of Sisiliano-Lopez's detention. As

---

[60] This information is critical because the Third Circuit in *Chavez-Alvarez* noted that an important consideration in whether prolonged detention without a bond hearing violates the Due Process Clause is whether the petitioner's actions were the cause of those proceedings' delay and, if so, whether petitioner's action were taken in good faith.

[61] *Walker*, 2016 WL 6082289, at *5 (brackets and internal quotation marks omitted). *See also Mendoza-Ordonez*, 2019 WL 1410893, at *20.

discussed above, the Government's decision to detain Sisiliano-Lopez without a bond hearing was reasonable up to the one-year mark and, thus, any work done by counsel prior to September 28, 2016,[62] is not recoverable under the EAJA.[63]

However, the Court finds that the remainder of the hours billed by Sisiliano-Lopez's attorney are recoverable. First, contrary to the Government's assertion,[64] billing for hours spent in conjunction with "the individualized bond hearing that [this Court] ordered the immigration judge to conduct to streamline the instant habeas action" is permissible under the EAJA.[65]

Second, the Government provides no reasoned basis for striking or reducing the fees related to counsel's travel for matters that are relevant to this § 2241 petition. Hours spent traveling for hearings or other matters are generally billed by attorneys, as those hours are directly related to the case and constitute time that may not be billed in other matters. Such "costs . . . are ordinarily billed to a client" and are therefore recoverable under the EAJA.[66]

---

[62] This includes all work done in August and September 2016, which amounts to $2,030. (Doc. 30-3 at 2, 4-5).

[63] *See Kleinauskaite*, 2019 WL 3302236, at *6 (awarding attorneys' fees only for work done after the one-year mark).

[64] Doc. 32 at 20.

[65] *Walker*, 2016 WL 6082289, at *5 (footnote omitted).

[66] *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). *See also Jean v. Nelson,* 863 F.2d 759, 777-78 (11th Cir. 1988) (finding any hours "necessary to the preparation of the prevailing party's case," including travel time, are recoverable under the EAJA); *Mendoza-Ordonez*, 2019 WL 1410893, at *22 ("Given the geographic realities of the Middle District of Pennsylvania and the recognition discussed above

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part Sisiliano-Lopez's Motion for Attorneys' Fees and order the Government to compensate Sisiliano-Lopez for attorneys' fees and expenses incurred after September 28, 2016.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

that there are a limited number of immigration attorneys practicing in the area, the Court will not deduct time for travel from the amount calculated").